The fourth district appellate court of the state of Illinois has reconvened. The Honorable Robert J. Stegman presiding. Thank you, Mr. Bailiff. Next case this afternoon is our number 424-1533, People v. Russell. As counsel for the appellant, please identify yourself. James Waller. Thank you. And counsel for the appellate, same please. James Ryan Williams for the state. Thank you, counsel. Mr. Waller, on behalf of the defendant, you may make your closing or your argument, brother. It's time. Thank you. May it please the court and counsel. My name is Jim Waller. I'm with the Appellate Defender's Office. It's my pleasure to represent Caitlin Russell before you here today. The jury in this case returned two sets of guilty verdicts that require mutually exclusive mental states for the same alleged omissions against the same child. Caitlin was convicted of performing the same acts both knowingly and recklessly. And under Spears and Fournier, that is a legal inconsistency and the only remedy is reversal and remand for new trial. But retrial on the counts should be barred under double jeopardy because the state failed to prove any of the counts. Counts 1 and 3 are not criminal acts under Gibbs. Counts 2 and 4 were not proven even under the language of the indictment itself. Finally, if the court finds that the state sustained its burden as to any single count, a new trial is still necessary because Caitlin was denied the effective assistance of counsel who handled the discovery violation so improperly that it led to the admission of the centerpiece of the state's arguments under counts 2 and 4. On the first issue in our brief, the verdicts are just facially inconsistent. The indictment instructions and verdicts describe two sets of omissions and for each omission, the jury found both knowledgeable action and recklessness. Counts 1 and 3 allege that the same conduct, failing to adequately supervise, was performed both knowingly and recklessly. And counts 2 and 4 allege that the same conduct, failing to obtain medical treatment after finding the child in the water, was performed both knowingly and recklessly. Under Spears and Fournier, knowledge and recklessness are mutually inconsistent mental states for the same act. And when that happens, good afternoon. When we're talking about, you said you have described the acts as the same acts. But if we think about it, are these acts or explain why these acts are not separable, in other words, different, and therefore did not involve mutually inconsistent mental states. Specifically, and this really, I think, is argued in your opponent's brief, I mean, did, wasn't it alleged, wasn't one of these acts the fact that the defendant knowingly caused or allowed the victim to be placed in circumstances that endangered its life, that is, considering the condition of the apartment, the fact that the victim, the child, was there and allowed to roam separable or separate act of recklessly, consciously disregarding the risk created by the dangerous circumstances that were at that apartment in which this child was cared for. So why are these not sept acts? So on counts 1 and 3, I absolutely agree. Counsel raises this on appeal. This is not the way it was presented to the jury. The acts were not separated this way before the jury. And really, well, and it should be noted, first of all, that this defect was brought to the court's attention before the trial, and they asked for more clarification. And when that motion to dismiss the indictment for not stating out the specific acts was denied, well, when that motion was made, it was incumbent upon the state to then, under section 111-3, give strict compliance and actually list out the specific acts. That wasn't done, and so she had to go to trial against kind of this vague statement of failing to do good things, which is really what was charged in the way it was argued. The evidence was certainly never apportioned to reflect two different separate acts. They were presented as the same acts and same facts. Only one was done knowledgeably, and one was done recklessly. This is, frankly, a post hoc justification by the state who's trying to salvage the fact that these can't go together, and certainly counts two and four. There's no separable acts there. I mean, that's just the exact same thing, failing to obtain medical treatment after finding the child in the water. It's the exact same act. It's really the same act that counts one and three. Mr. Williams does a good job of arguing post hoc after the defendant has a chance to present a defense on this case, but they were separable acts, but that's not the way it's treated at trial. So the state argues, well, first of all, the state argues that the issue was forfeited, but there's three problems with that argument. It wasn't forfeited. When it was raised in the post-trial motion, the state then forfeited any response to that argument, including the argument that it was forfeited, and also the issue can't be forfeited under Fournier. No, the state argues it was forfeited, but this wasn't a problem with the instructions, really. The instructions were fine. It's fine to charge alternate mens rea in different counts, and the instructions accurately say to the tests and the elements, but the prosecutor has to make it clear to the jury that only one set of guilty verdicts can be returned for each of these sets of counts. They didn't do that, and then the jury returned both pairs of guilty verdicts, and Fournier says when that happens, the judge has the duty to send that back for further deliberations to resolve it before discharge, and if that doesn't happen, it has to be remanded for each trial. That's, in as many words, what Fournier holds, and in fact, in Fournier, some of the inconsistent verdicts and instructions came at the defendant's request, which was proper because you can submit lesser included, just that the alternate counts here were not improper. Even when it was done at the defendant's request, the appellate court said the issue is not waived or forfeited, and the Supreme Court ratified that holding when it went up. Counsel, let's suppose we agree with your argument. Yes, sir. What's supposed to happen next? Well, the case has to be remanded for a new trial on any of the counts that survive this appeal. I would argue that, I argue that double jeopardy prevents any of those really from surviving. On counts one and three, well, I'm going to largely stand on the briefing on counts one and three. Gibbs shows us that not every tragedy or household accident is a crime. It provides some guidance to suggest that household accidents like this are outside the purview of the legislature intended to criminalize, and so the state failed to prove a crime in counts one and three. When the case is remanded under the first or fourth issue, double jeopardy should prevent retrial on those. I don't grasp that, counsel. I don't grasp the double jeopardy argument. Well, the state failed to prove these counts. The state brought all of its evidence and did not prove that a crime occurred beyond a reasonable doubt because they didn't, first of all, the language in the, specifically these charges. If the state wants to bring some other charges and the statute hasn't run, fine, but the way it's charged here with these kind of general failure to supervise instead of a specific act or omission where that duty was not lived up to, the state had the opportunity to prove that. The defense had an opportunity to defend against the state didn't prove it. If the state wants to try to prove a specific act, then maybe they'll have to bring a different charge and the defense gets a chance to defend against that, but as it stands here- You said that the jury instructions were correct. I believe I heard you say that. Yeah, there was nothing wrong with the instructions that were given. So the jury returns verdicts on both. So they find they're guilty on both. Yes, sir. Which means they found enough evidence to suggest that there was wrongdoing. I understand your argument about specificity, but doesn't that cut against any double jeopardy argument, i.e. there's more than enough evidence there to have persuaded a jury that she not only did a bad thing, she did two bad things, inconsistent, but still doesn't that have meaning? I think, your honor, you've lit upon it. The jury found that there was wrongdoing, that she did a bad thing. The state never proved that this specific crime occurred. This is maybe a bad thing. This is maybe negligence, and certainly there's a whole field of civil law that is applicable here, but it doesn't rise to the level of a crime. The state had its opportunity to prove a crime because the state was allowed to present this to the jury. The jury found that something bad happened. I think as we get into issue four, the prejudicial and irrelevant evidence that came in about this purported thump an hour ahead of time that should never have come in, I think what happened is that's clear that that prejudiced the jury against all the counts. And that's why the jury didn't parse the charges correctly, didn't find the right mental states correctly. The state was allowed to... I want to follow up on Justice Connick's question. What if the state charged the defendant only with count one, endangering the life or health of a child, the language used in that charge, and there was no count three, and the jury returned a guilty verdict? What would be the problem with a guilty verdict on that basis? I think that it would fail under Gibbs. Our argument is that it would fail under Gibbs, that this does not rise to the level of a crime. Why would it fail under Gibbs? What in Gibbs would make that no longer acceptable? Because as in Gibbs, this was at worst common negligence that resulted in an absolute tragedy, and not every harm is a crime. Gibbs shows that some of these tragedies are beyond the purview of what the legislature intended with this statute. And so I would argue that this is analogized most closely to Gibbs, which found that it's outside the purview of the crime. Now, Gibbs is a 1970 decision of the appellate court. We're not bound to follow it. We don't think it was well-ruled or well-decided. And the other thing is, leaving aside Gibbs, why shouldn't count one by itself? Why isn't that sufficient to sustain a conviction? Your Honor, my argument is that count one is no good under Gibbs. I didn't make another argument on appeal under Gibbs. Leave Gibbs aside and just tell me why count one is no good. I can't give you another argument. I haven't briefed, Your Honor. My argument is that it's no good under Gibbs, and I have to stand on that. Gibbs is kind of a strange case and different, long time ago. I take it, you know, we have benefited from your arguments before, Mr. Waller. That's good news and bad news, because the bad news is I expect you do a very thorough job, and if there was something since Gibbs in 1970, you would have told us about it. Isn't that correct? Your Honor, if there was another case as on point as Gibbs is, I certainly would have raised it. I believe that Gibbs is on point. It's this court's prerogative to follow it or not rely on stare decisis, and that's certainly your prerogative. But I believe that Gibbs shows that this shouldn't be considered a crime. Counts two and four are a completely different beast. Counts two and four were just straight up not proven under the language of the indictment that was brought. The state's argument at trial and on appeal asked this court to endorse something extraordinary, that a caregiver who pulls a child from the water and attempts CPR, calls the parent, and rushes to the hospital along the fastest route with the fastest method can be found guilty beyond a reasonable doubt of failing to obtain medical treatment after finding the child in the water, which is what the indictment charges. The state's lead investigator proved this defense. When asked whether it would be fair to say whether she sought immediate medical attention, he answered, when she realized what was happening, yes, when she realized what had happened, yes, she did. That's kind of the end of it. The entirety of the state's argument at trial about a delay relies on a singular, questionable claim that an officer said that Caitlin said six months later that an hour had passed between when she heard a thump and when she checked on the child. But she wasn't charged with failing to obtain medical care after hearing a thump. She was charged with failing to obtain medical care after finding the child face down in the water. That's what the indictments on counts two and four both specifically say. And all of the state's evidence shows the opposite, that as soon as she found the child in the water, she began CPR, she called the mother, she took the fastest way to the hospital. So the state absolutely failed to prove counts two and four under the own language of their own indictment. And when the case is remanded under the first or fourth issue, double jeopardy should certainly prevent retrial on those counts as well. I have a question about this. I'm not sure I understood your claim about the inadequacy of the indictment as far as putting defendant on notice as to what she was charged with. Is that what you were arguing? Not here, Your Honor. Here, the state charged her with failing to provide medical treatment when she found the child in the water. The state didn't prove that. The state relied, based on all of its arguments, on this testimony about a thump that she had heard an hour earlier. Well, that's not what she was charged with. So the state is clear. On counts two and four, the state, I think, was clear in their theory that she failed to obtain medical treatment. Counts one and three. Count one, alleged defendant committed endangering the life or health of a child in that she knowingly caused or permitted the child under 18 to be placed in circumstances that endangered her life or health in that she failed to adequately supervise the child in circumstances with approximate cause of the death. Were you arguing earlier that that was insufficient claim in the indictment? It is, Your Honor. It is because they're basically citing an omission that's failure to supervise. It's not a specific action that she could have taken. I should be more clear. My question is, is the indictment failed to allege sufficient acts, or you don't seem to be saying that the acts they alleged aren't enough to state the offense. The first question is, did they allege enough acts so that she understood the nature of the charge against her? I don't think that they did. And I think that this court erred in denying the motion to dismiss the indictment or and not requiring strict compliance with the indictment. Section 111-3. When you talk about strict compliance, 111-3 is pretty general. If there's a claim that a defendant doesn't understand the charge against her, it would be 111-6, request for a bill particulars, wouldn't it? Say, I need more details about all this. And that would be addressed to the court's discretion to see if that's the case. But typically, as you know, most indictments are pretty bare bones things, just setting forth minimal amounts of facts in the state's judgment to state a crime and to put the defendant on notice, which is essentially all 111-3 requires. It seems to me if you're arguing that more particulars were necessary, the defense should have filed a motion for a bill of particulars and raised that specific objection. But that wasn't done, was it? There was not a motion for a bill of particulars. But I would argue, I would tell you that section, the existence of section 111-6 does not excuse performance under section 111-3. And when they filed that motion to dismiss the indictment, that strict compliance with 111-3. You froze up there a moment. 111-3 was required. Yes, they could have. I cut out. I'm sorry. The existence of. You froze up. You picked up again. Go ahead. Okay. The existence of 111-6 does not excuse explicit specific performance under 111-3. And when it's raised pretrial, like it was here, then they needed to cite specific actions that she could have defended against. If the omission was leaving standing water for too long around a child, then that's something maybe she could defend it against or could have been testimony about who filled the water, what the knowledge, who is knowledgeable about it. But just failure to supervise is, I argue, and the motion to dismiss the indictment suggests that it's not specific enough of an omission to sustain the conviction on that count. And that's the extent of my argument on counts one and three. Again, please. Are you raising on appeal the failure of the trial court to dismiss those counts for the reasons you just argued? Well, I think that was an error. I didn't raise that in my brief. I think the court did error in that. But the bigger point here is to, for double jeopardy purposes, is that strict compliance was not granted after this was raised pretrial. And therefore, there was no... Basically, it comes down to almost a failure to state a claim. The state did not prove up any specific acts that she failed to have lived up to. Have you raised that specific argument on appeal? I'm sorry, Your Honor. I apologize. Have you raised that specific argument on appeal? My argument on appeal is that the state did not prove it, did not prove a crime under Gibbs. I don't think you've argued that the state's charge failed to state a cause of action, have you? Well, they were allowed to... When they came to trial and didn't provide any evidence that this was anything more than the typical household tragedy that occurred in Gibbs, and Gibbs, at the time of this trial, was good law and the defendant was entitled to rely upon it. When the state didn't raise any, didn't probe any evidence that this was more than the type of household tragedy that is not criminalized, then the state failed to prove the guilt beyond a reasonable doubt and retrial should be barred on those counts. Now, as I was saying... In terms of notifying what you're charged with, does the evidence that was presented have anything to do with notice to the defendant? By that, I mean to say, I think I understand that defendant said, I fell asleep. I think the defendant said, I let this toddler run free around the apartment and play. I think the defendant said, I did not close the door to the bathroom. I think the defendant said, I left water in the tub because apparently that's our regular practice. There may have even been a statement, but somebody may have said, I should have shut the door to the bathroom. I can't remember that for sure. I don't believe that was in there, but... But anyway, that evidence, doesn't that suggest to the defendant what the mistakes she made were? That made it more than a common household tragedy. My answer, your honor, is that it didn't suggest a tragedy any different than what occurred in Gibbs. That you could recite the same list of acts that occurred in Gibbs. The door was left open. She didn't pay attention to a child that was wandering around. She was folding laundry instead of paying attention. I can walk through the exact same steps and do it a one for one for Gibbs. And that was the operative law while this trial was being held. The state didn't prove anything beyond that. So the state didn't prove counts one and three is the extent of my argument there. Isn't falling asleep different than getting distracted by folding laundry? Inattention is inattention, your honor. I mean, the point is that nobody's paying attention to the child because they're folding laundry or because they're taking care of a child from midnight to 5 a.m. and she falls asleep and an horrible thing happened. In both cases, it's... Your time's up. I have a question for you and I apologize. I want you to finish your answer to Justice Connacht's question. Sure. I believe that is the extent of my answer, your honor, is that they didn't prove anything beyond the type of negligence that occurred in Gibbs. My question deals with the instructions in this case. The reckless conduct instruction had just one proposition, that the defendant recklessly performed an act which caused great bodily harm to Paris Greene and there was no further clarification what that act was. The child endangering the life or health of a child instruction had three propositions, that the defendant knowingly caused and prevented Paris Greene to be placed in circumstances that endangered the life or health of Paris Greene, and second, that at the time the defendant did so, Paris Greene was a child in the age of 18, and third, that the defendant approximately caused the death of Paris Greene. Looking at these issues and instructions which were submitted to the jury, these talk about different matters. They're not the same thing, are they? Your honor, yeah, we're having a hard time frankly connecting those to the evidence and arguments that were given at trial. If I said there was nothing wrong with the instructions, they may need another look for me. That may not have been correct. Well, but isn't that your fundamental argument, that the jury returned inconsistent verdicts? Looking at these charges, if the jury convicted of reckless conduct and convicted of the other one, the child, nothing in the issues instruction is on its face, inconsistent, is it? I apologize, your honor. I'm having trouble following, and maybe if I think about it, I can come back to you on rebuttal, but you're saying, I'm sorry, you're saying that the instructions did point out two separate acts for different counts? I misunderstood. Well, the reckless conduct is just one element, one proposition. Right. Defendant recklessly performed an act which caused great bodily harm to Paris Green. There's no further clarification what that act was, and the evidence was about a lot of stuff going on during the time leading up to when she was taking care of this child and then brought the child to the hospital. So lots of acts there, but the endangering the life or health of a child instruction. There's three propositions, and I would just read them. First proposition, defendant knowingly caused the permitted Paris Green to be placed in circumstances that endanger the life or health of Paris Green. Second, that at the time she did so, Paris Green was a child under 18, and third, that defendant approximately caused the death of Paris Green. So essentially the argument has to be that the first proposition of this instruction and the proposition of the others are legally inconsistent. Namely that she recklessly performed an act, not specified, which caused great bodily harm. And the other one says that the defendant knowingly does the knowingly caused the permitted Paris Green to be placed in circumstances that endanger the life or health of Paris Green. These don't sound to me like they are on their face, mutually inconsistent. I'm sorry, I apologize. I didn't mean to speak over you, but I also don't want to go into the state's time too much. I think that they're basically repackaging the same act two different ways. They're reframing, they're rephrasing the same act two different ways to have it show up as two different counts. They never apportion. If the state's theory is that these were really two different acts, they never apportion the evidence to say which evidence points to which act. The argument at trial, the argument at closing certainly suggests that they were just charging both of these with different mindsets. The jury could pick whichever one it wants. Unfortunately, the jury picked both. If the state's theory was that there were two different acts, if that was their theory before appeal, which it wasn't, it didn't show up in the transcripts anywhere. But if that was their theory, then they needed to have apportioned that evidence so that we don't have a problem. The case is maybe Cisco with the stabbings with three acts. We've got a one act, one crime problem. They didn't apportion any evidence to say this act goes to this act, this act goes to this act. They just tried to have everything both ways under two different mindsets, deal 6-12 and pick them and let the jury sort it out. When they act that clumsily and the jury comes back with guilty on everything, then the judge needed to have sent it back. It was sloppily prosecuted. The evidence was not clear. I understand the rule that the jury can't return legally inconsistent verdicts. But don't the verdicts on their face need to be legally inconsistent, such as the jury finding the defendant, if they were permitted to do so, ignored the IPI instruction, guilty of first degree murder, and reckless conduct causing the death for involuntary manslaughter. If the jury returns those two verdicts on the face of it, based on the instructions, we can see that can't be right. And I'm just, I suppose what I'm saying is I'm not familiar, Mr. Waller, with any case where the issues and instructions don't contain the inconsistency, but we'd have to go to, as you're saying, consider the argument made by the prosecutor in support of these various charges. And if you consider those, then we have an inconsistency. I don't know of any case that's ever so found. Your Honor, again, I think that the state is just using different words to establish the exact same actus reus in both of these counts. And they're using the same actus reus and different mens rea in both sets of counts. They didn't argue that they were different. Again, I would say the cases in Spears and Fournier's, I would need to look at them, but I suspect that the elements instructions on the different counts that came back, we're going to have different elements. We would need to double check that. But again, they picked different words to establish the same actus reus, which is a basic failure to supervise, failure to be a good babysitter. And one was done knowingly and one was done recklessly. Either way, the case does need to go back on the ineffective assistance argument, which I didn't get to, but is briefed extensively. Counsel chose the wrong remedy for that. There's no reason the court wouldn't have granted the correct remedy and prejudiced against the entire trial. I'll let counsel speak now. Thank you. Mr. Williams, on behalf of the state, you may make your argument at this time. Thank you, your honor. May it please the court, counsel. My name is James Ryan Williams, and it is my privilege to represent the state before this honorable court. This case is not about a momentary lapse in supervision or even a tragic household accident. It's about a caregiver who knowingly permitted a two-year-old child to remain unsupervised near a water-filled bathtub for an extended period of time while in the other room playing on her phone or perhaps even falling asleep. And then, upon discovering the child unresponsive, delayed the immediate professional intervention that was required to save her life. Regarding defendant's argument one, that the verdicts in counts one and three. I want to make sure I understand what you're arguing. In your brief on page eight, you say when defendant heard a boom in the bathroom, which later proved to be the victim falling headfirst into the bathtub, she did not investigate the sound for approximately one hour. Is my inference correct that, based upon that argument, you are claiming that that's when that was the circumstance in which the child died? I don't understand, your honor. I'm sorry. Well, the defendant heard a boom in the bathroom, which later proved to be the victim falling headfirst into the bathtub. So, is it your position that it's the victim who's falling headfirst into the bathtub that led to her death? She then drowned in the water in the bathtub? Yes. Okay. So, and your claim is she did not investigate that for an hour, and that constituted which? Which of the crimes that you're charged with, the failure to look into that? Well, here, if I recall correctly, the stated closing argument actually separated this conduct with respect to count one, arguing that the child was placed in the dangerous circumstances, that being the proximity to the water while the defendant knew that she was mobile and not being supervised. And then, separately, that the defendant consciously or that the defendant separately recklessly performed the act of supervision itself by consciously disregarding the substantial risk by being in the other room, not supervising the victim for an extended period of time, and instead focusing on her phone. So, our position, at least with respect to argument one, is that these are separable acts and that the state did separate them, at least for the purpose of being closing argument. Okay. Well, and then following up on that, one of the difficulties, it seems to me, with regard to the indictment, and I think the state's closing argument as well, is that count one, which charged the defendant with committing endangering the life or health of a child, used language in part there in which it said child placed in circumstance and endangered life or health in that, quote, she failed to adequately supervise the child under circumstances which possibly caused the child's death. Count three, alleging reckless conduct, uses the same language in that she recklessly caused bodily harm to Paris in that she failed to adequately supervise Paris, the same exact phrase, failed to adequately supervise Paris. Why isn't Mr. Roller's point a good one, that you can't charge knowing behavior and reckless behavior and use the same language? It's predicated on separate acts, your honor. The child endangerment is predicated on the fact that she exposes this child to these dangerous circumstances, and then the reckless conduct is the fact that she's in the other room consciously disregarding the danger that she's just created by exposing the child, and instead, as I recall, playing on her phone for at least 15 minutes. And I believe that the state separated these in closing argument. So although, I guess, in a more general way, she was failing to supervise, but she was failing to supervise in two distinct ways. One, by exposing the child to this dangerous circumstance, that being the water, knowing that the child's mobile, and then separately from that, going to the other room and losing focus and focusing on her phone instead of the child. Go ahead with your argument. Sure. So, I guess, then, to that end, defendant argues in the second argument that the child court erred by not dismissing counts 1 and 3 because they act they allege mere negligence. With respect to child endangerment, the statute explicitly defines the offense as knowingly causing or permitting a child be placed in danger. And to permit implies acquiescence or consent to that dangerous circumstance. It's not passive. It's a purposeful decision. And when the indictment here alleged that the defendant permitted the child to be placed in a dangerous circumstance by failing to supervise, it was charging her with the volitional act of abandoning her duty of care. By arguing that the state must allege an affirmative physical act, the defendant is asking this court to judicially redact the word permit from the statute. And then with respect to reckless conduct, defendant's reliance on gives, I would submit, is misplaced. Because there, the defendant simply made a mistake. She left a door open momentarily while doing laundry, and the child fell down the stairs. The appellate court rightfully perhaps found that that momentary lapse in an otherwise safe environment was ordinary negligence. But here we don't have a momentary lapse. We have a conscious allocation of attention. The record shows that the defendant admitted to leaving the two-year-old near a bathtub with water for an extended period of time while she was in the other room. Sounds like a question for you, Rob. What class felony is the failure to adequately the child endangerment? I don't know, your honor. What class felony is the reckless conduct? I don't know either. I think there's three or four, but I just don't recall offhand. The reason I'm asking this is, you know, and it's the flip side of the question you asked, Mr. Waller, given the uncertainty and difficulty in precisely phrasing all this, I'm wondering, state gained by charging these multiple counts, what sentence was imposed in this case? I don't recall specifically, but I do recall it was, I will say it based on these facts, I was rather shocked at how short it was. I think maybe 18 months probation or don't quote me, but it was a short sentence. You know, had the state just charged one of these, we wouldn't have the issue of inconsistent verdicts based on mental states. And I'm just trying to figure out when you're using the same language and given, it's a very sad start. And you're talking to a panel that's all been sentencing judges, and this would be a difficult and unpleasant thing to deal with sentencing. And I'm not going to second guess the sentence that was imposed, but just wondering what's the advantage here? Why did we do this? Why did we see this here? And had there been just count one and not count three, it seems to me the issue that Mr. Waller has raised wouldn't be present. Well, your honor, as you often say, I don't get to pick my cases. I can't speak to what the assistant state's attorney was thinking with the precise way that this was charged. Just as a matter of respect for the adversarial process, I'm doing my level best here to represent that. The other question I asked Mr. Waller is, it's looking at the issues of instruction, seems to me that there's on their face, no inconsistency. So what he's arguing is that the argument of the state, essentially saying the same behavior underlay both of these charges. And the charges had different mental states that we could look beyond just the language of the issues of instruction to find the inconsistent mental stake there. Maybe he's right. I just, this is all kind of new and different. I haven't seen much of this and that Mr. Waller, the greatest counsel that he is, is relying on the decision of 70 years old suggests that there's not a lot of caseload out there. So what are your thoughts on that? I'll be honest on that. I had a lot of difficulty following that line that wasn't briefed. And I mean, the thing that kept coming to my mind, what you mentioned earlier, your honor, was the fact that a bill of particulars wasn't filed here. And that, as you stated, charging instruments are quite frequently particularly general. I mean, I've almost never seen a charging instrument that has much in the way of particular facts alleged. And so frankly, I was a little bit, just to be honest, I was just a little bit confused by and taken back by the suggestion that this general term, failure to supervise, had to be more specifically defined in light of the lack of bill of particulars. I took up some of your time. I don't want to interfere with it. Go ahead with your argument, counsel. And then finally, I would just note with respect to the sufficiency of the evidence on counts two and four, the defendant claims that she acted immediately by driving the victim to hospital. But the objective medical evidence tells a vastly different story with a number of critical facts that are just outright ignored by defendant in the reply brief and here at oral argument. But just to start, after finding the victim drowned, the defendant attempts CPR for five minutes, even though she admittedly doesn't know how to do it. Then instead of calling 911, she tries calling the victim's mother multiple times, finally getting a hold of her. After getting a hold of her, she's hesitant to show the victim to her mother. When she finally does, the victim at that point is already unresponsive and bubbling from the mouth. Still then, she doesn't call 911. She drives the victim to the hospital. I understand that might have been a similar amount of time. But regardless, by the time she gets to the hospital, she apparently parks in the parking lot, doesn't go to the ER door, and she takes the time to clean up the victim's face before taking her in there. But I think most critical of all in the fact that's ignored by opposing counsel is the fact that by the time the victim gets to the ER, medical staff described her as, quote, floppy, very, very cold, and blue. And in fact, she was so cold, her body temperature was so cold that it couldn't even register on the hospital's thermometer. So, I mean, you know, regardless of whether we have this evidence, you know, that counsel takes exception to in his fourth argument about Detective Redpath, the fact of the matter is that we have a cold, lifeless infant body that alone establishes that there was a significant delay in seeking medical attention. And it flatly contradicts the defendant's timeline that she immediately took the victim to the hospital. So... So, counsel, let me ask you this. You clearly are on top of the facts of this case. It's very unfortunate and difficult. But let me ask you this. What were the acts that you would argue to constituted the basis for defendant's conviction for endangering the life or health of the child? In count one? Yes. In count one, it's essentially absconding from her duty of care by permitting the victim to roam free in a dangerous apartment where she knows that there's standing water in the bathtub. So, that's, you know, that's the failure to adequately... Did the prosecutor at trial identify those acts as the basis for the charge in count one? If I recall correctly, in closing argument, I cited it in my brief. I don't recall the citation offhand. But specifically with respect to counts one and three, I believe that the prosecutor made an effort to predicate those on the separate acts of the permitting the victim to roam free versus consciously disregarding the substantial danger posed by the apartment by, you know, being on her phone or being in the other room. Well, that's what my next question is. To ask you to identify the specific acts you believe on this record would support the conviction under count three for reckless conduct. So, after having exposed the child to these dangerous circumstances in the apartment, going to the other room and diverting your attention to your phone while you know that a mobile two-year-old child is exposed to standing water in a bathtub, I would say that that would be the conscious disregard for a substantial risk posed by the danger of the apartment. Is that different from what you just explained would be the basis for the conviction in count one? Yes. So, in count one, the child endangerment is exposing the child to these dangerous circumstances. In count three, the reckless conduct is the ignoring or the not supervising, not going to the other room while the victim is exposed. Did the prosecutor at trial make clear that these are different factual predicates for counts one and count three? I don't. Again, in closing argument, both of those facts were mentioned separately as supporting the convictions, but I don't know that they necessarily connected the dots between counts one and counts three with the more specific facts. Also, I mentioned- They weren't, if I can just add, they were not reflected, that was not reflected in the jury instructions either, right? The differences in one and three that you just talked about. Okay. Did the jury instructions provide for the possibility of having them amended, is the IPI committee commenting, if necessary, to identify specific acts? I don't know, your honor. Well, I don't know either, counsel. I just was-  Curious about it. So, go ahead. Well, unless the court has any further questions. I have a question, counsel. Isn't there a strong common sense argument or strong inference that this child was dead when she took it out of the bathtub? Yes. The timeline is muddy because she told, I think, three different versions of events, and all we really know, as a matter of fact, is that by the time she got to the ER, the, again, and I've personally never heard of such a thing, but the victim's body was so cold that it couldn't even register a temperature on the hospital's thermometer. So, that would certainly infer that the victim was probably already passed by the time that she was discovered. Yeah, thank you. And unless there's any further questions? There are a lot of questions, but I don't get formulated anymore, I don't think, so. All right. Thank you for your time. Mr. Waller, any rebuttal, sir? Thank you. Yes. Briefly on Justice Connacht's question there at the end, if the child had passed before she was taken out of the bathtub, then counts two and four cannot be proven. They're a legal nullity. Counts two and four charge that she did not get medical treatment when she pulled the child out of the bathtub. That's the exact language out of the indictment. And if that's the case, if the child just passed at that point, then there's nothing she could have done criminal from that point on to not get medical treatment. And all of the evidence suggests that she did get medical treatment as soon as she pulled the child from the water. If the state wanted to charge that she was negligent or endangering or anything when she didn't hear the thump, that's what they needed to have charged. They didn't. They said when she pulled the child from the water, and that's what they failed to prove. Counsel, I sort of agree, do agree with counsel when he says that the argument the state made at closing, at least as he was that she exposed the child to the risk and then disregarded the risks. That's like charging burglary by entering without permission and burglary by remaining without permission. You can charge both of those, but you don't get convictions for both of them. You got to choose one or the other. It's the same act. If exposing the child to the risk was wrong, then she was disregarding the risks. And you can't then also criminalize disregarding the risks. You get one or the other. The way it's charged, the way it's argued, the way evidence is apportioned here. Evidence about the body temperature, again, it's frankly not responsive to the charge, which was that she failed to get medical treatment after finding the body in the water. And there was just no evidence of that. Charging documents are usually general because most offenses lay out specific elements. Some are different. Child endangerment, reckless conduct, disorderly conduct are different. They are general purpose statutes. When you charge those, you have to allege specific acts. We don't see it very often because disorderly conducts don't come up on appeal that often. But it's one of those child endangerment has to cover everything from seatbelts and car seats to leaving guns and drugs out around the kid. And when that's the case, you have to allege the specific acts that were taken. And disregarding generalized risks, they didn't even charge that she disregarded the risks of the bathtub water. They just said disregarded risks of an unsafe environment. That's just restating the name of the charge. It doesn't give the specifics that they were required to do, especially when it was brought to their attention pre-trial under Section 111-3. Again, I would say anything you want to say about Gibbs can be said here, that there was a momentary lapse in attention. There was nothing, I don't believe there was any, I've read Gibbs many times. I don't believe there saying that the environment was otherwise safe. We talked about that here. I don't believe that that's in Gibbs, but I may be wrong. I don't have Gibbs right in front of me, but I did read it today. That's most of the things I wanted to address. Again, the evidence that there was an hour-long delay should never have come in. Counsel tried to get a civil adverse inference instruction, which would have been harmful to the defense. It was absolutely deficient conduct not to seek a Rule 415G exclusion. When there's a good chance it would have been granted, there was no other reasonable remedy the court could have given. Even if exclusion is generally disfavored, further continuance wouldn't have helped here, further discovery wouldn't have helped here, and you can't cross-examine on the substance of missing evidence that the state deleted. 415G exclusion probably would have been given, which is sufficient to establish prejudice, that there probably would have been a different result if that had been pursued, and we know it was deficient conduct. So at a bare minimum, either under the inconsistent verdicts or ineffective assistance of counsel, this has to go back for a new trial on any of the counts that survived, and we don't believe that any of them should. Thank you guys for your time. You were both asked a lot of questions, Mr. Williams and Mr. Waller, and I want to thank you both. You were very responsive to the questions. This is a difficult and involved case, and I think the court benefited from your good advocacy, so I want to thank you for that. We will take this matter under advisement, stand in recess, and a written decision will be rendered in due course.